FILED - USDC - FLMD - ORL
APR 9 2024 PM1:31

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA

David Bryan and Kierra Thomas

Plaintiffs,

v.

City of Orlando

Defendant.

## Complaint for Deprivation of Civil Rights Due to Failure to Train and Deliberate Indifference

### Statement of Claim

Plaintiffs, David Bryans and Kierra Thomas allege as follows:

### Jurisdiction and Venue

- This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 1983.
- Venue is proper in this district because the alleged violations occurred within the jurisdiction of this Court.

### Parties

- Plaintiffs are David Bryans and Kierra Thomas, residents of [FLorida].
- Defendant is the City of Orlando, Florida.

### Factual Background

We the Plaintiffs, an African American couple, have systematically been deprived of our constitutional rights due to the City Of Orlando's failure to train its Police department (OPD) and its deliberate indifference regarding the identification of federally legal hemp (a agricultural commodity) resulting in the deprivation of our freedom, property, privacy, and peace of mind. This indifference echoes the precedent set Canton v. Harris, 489 U.S. 378 (1989), where the Supreme Court established that a municipality can be liable for failing to train officers in a way that results in violations of citizens' rights.

**Federal Law and The City Of Orlando's Inaction:**

- The 2018 Farm Bill (7 U.S.C. § 1639o) definitively legalized hemp, defined as cannabis containing less than 0.3% Delta-9 THC.
- This law explicitly protects interstate commerce of hemp and prohibits states from impeding upon it or the shipment/transportation of it through the state; 7 U.S.C 1639o (a) & (b)
- Despite nationwide media coverage and a direct memorandum from State Attorney Aramis Ayala (July 19th, 2019) outlining a new drug policy limiting its effects on mass incarceration accommodating hemp legalization and mass , the City of Orlando has failed to properly train its officers.
- This constitutes deliberate indifference to established legal precedent, as outlined in Canton v. Harris.

**Inadequate Training and Deliberate Indifference:**

- The Orlando Police Department (OPD) authorizes a 7-factor test for its employees to determine cannabis legality. However, this test demonstrably overlooks crucial scientific testing and shows a deliberate indifference by maintaining a policy of inaction in light of knowledge that there is no other way to differentiate varieties of cannabis in the field besides specially designed field test to test THC concentration (which the department possesses) and remains the only definitive method to differentiate hemp from marijuana. In light of the legal precedent set by *Baptiste v. State*, 995 So. 2d 285, 291 (Fla. 2008), it is clear that a potentially lawful activity cannot be the sole basis for detention when there is only a reasonable suspicion of criminal activity. Specifically, in *Hatcher v. State*, 342 So. 3d 807, 813 (Fla. Dist. Ct. App. 2022), Hatcher's possession of a substance that smelled like marijuana was potentially lawful, as the substance was indistinguishable from hemp without scientific testing. "id' the seizure of potentially lawful hemp violates an individual's Fourth Amendment rights against unlawful search and seizure . This violation occurs because the possession and sale of hemp are not only legal within the state of Florida, but also a federally protected act of interstate commerce, safeguarded by the commerce clause [*Article I, Section 8, Clause 3* of the U.S. Constitution] and the 2018 Farm Bill, codified in 7 U.S.C. 1639o.
- The omission of use of the proper field test to distinguish hemp from marijuana. highlights the City's deliberate indifference to the rights of its citizens officers may come in contact with and proper training.
- The 7 factor bulletin for determining the legality of cannabis for officers employed by the City Of Orlando prioritize factors like past criminal history, smoking activity, packaging, and quantity amongst other factors which are irrelevant to determining legal classification of a cannabis sample and potentially discriminatory seeing the the decision in *Hatcher v. State*, 342 So. 3d 807, 813 (Fla. Dist. Ct. App. 2022) which clarifies scientific methods are the only way to distinguish hemp from marijuana.

**Unlawful Search and Seizure Fueled by Inadequate Training**

- On February 3rd, 2022, Plaintiffs were lawfully transporting and storing approximately 950 lbs of industrial hemp (accompanied by compliant lab certificates) when their storage unit was raided. This seizure was based solely on factors that cannot determine the legality of hemp(*Hatcher v. State*) and Detective Maldando's use of the NIK field Test Kit E. While the NIK test E can detect cannabinoids, it is not designed to differentiate between legal hemp and illegal marijuana. The City of Orlando Police Department (OPD)

acknowledges this limitation and possesses separate field tests specifically for hemp identification. Detective Maldonado's reliance on the NIK Test E for probable cause, despite the availability of a more precise test signifies The City of Orlando failure to train, and clearly shows the City's deliberate indifference to citizens who might be in possession of legal hemp.

**Internal Affairs Disregard and Pattern of Indifference:**

- Plaintiffs' citizens regarding the inappropriate field test and violation of their rights submitted on (June 27th 2023) were dismissed by Internal Affairs, further demonstrating a pattern of deliberate indifference failing to train its employees in regards to constitutional and federally protected acts.

**Further Evidence of Unreasonable Seizure and Deliberate Indifference:**

- After the illegal seizure On May 5th 2022 OPD received THC threshold analysis (FDLE's method to differentiate hemp from illegal marijuana) results back from the FDLE indicating that the cannabis passed and was under 1% THC therefore it was most likely legal hemp.
- Despite the FDLE lab results from the seizure on February 3rd 2022 indicating a THC level below 1%, (which is well outside the range of marijuana which is commonly over 12% Detective Maldinado proceeded to order the destruction of the 950 lbs of hemp (retail value of 3.6 million dollars) in November of 2022 with the explanation of the accompanying documentation indicated an illegal concentration of "Total delta 9" THC (FDACS Acceptable hemp THC Level for purposes of cultivation compliance with the state hemp program demonstrates a failure to train officers in the understanding of Florida's hemp cultivation regulations, FDLE's testing methodology, and indifference to the plaintiff's business, livelihood, and future earnings.
- This error points towards inadequate officer training regarding hemp identification, the proper interpretation of lab results, as well as when to proceed with criminal actions.
- Furthermore, Florida Statute 581.217, which Maldonado referenced, applies solely to the regulation of the cultivation of hemp within Florida. Communications with Florida Department of Agriculture and consumer services (FLorida's enforcement and regulatory authority on hemp cultivation via email, Public record (#P041527-022224) That reinforces the fact that hemp, which is a product of interstate commerce not cultivated here in the state, is outside of their regulatory purview (the state hemp program 581.217) showcasing yet another instance of the Orlando Police Officers misapplying the law due to a lack of training.

**Entrapment, Unfounded Charges, and Deliberate Indifference:**

- Following the February 3rd seizure, Plaintiffs were subjected to an undercover operation for "street-level narcotic sales." The undercover agent arranged a controlled buy on July 26th, 2023, and purchased hemp from Mr. Bryan despite being presented with independent lab reports and communications indicating the substance was a legal variety of cannabis that did not cause psychoactive effects like illegal marijuana.
- After this buy, due to indifference to the possibility that Mr. Bryan could actually be participating in a federally protected business or engaged in activity protected by the United States Constitution, and the city's failure to train in combination with the OPD's 7-factor training bulletin, the officer repeated a prior mistake. Just as in the February 3rd incident with his superior officer, he used the NIK Test Kit E, which the department knows

is incapable of distinguishing hemp from marijuana, instead of the department-provided field test that identifies hemp.

- Detective Shane Hayles used this presumptive positive field test result to acquire warrants to invade the plaintiffs' privacy via social media, bank account records, GPS tracking on their automobiles, and surveillance of their home.
- Mr. Bryan and Ms.Thomas were subsequently arrested and charged with first degree felonies punishable by life imprisonment  during the execution of a search warrant, which stemmed entirely from the initial investigation and use of the improper NIK field test by Nitza Maldonado. This test is guaranteed to come back positive for cannabis since hemp is cannabis, and an immaterial FDLE report lacking crucial THC threshold analysis was also used as justification.
- These arrests, fueled by inadequate training and deliberate indifference were an undisputed misscarriage of justice and violation of their civil rights.

**Pattern of constitutional violations stemming from official policy or "custom" (7 factor training bulletin) and indifference**

- *City of Miami v. Harris*, 490 So. 2d 69, 71 (Fla. Dist. Ct. App. 1986) Both parties agree that essential to recovery in a Section 1983 action against a municipality is a showing that the alleged constitutional deprivation flowed from an official policy or custom of the municipality, and that the policy or custom was "the moving force of the constitutional violation."*Monell v. Department of Social Services,*436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611, 638 (1978). A finding of a policy or custom is necessary because it shows that the violation was "neither random nor unauthorized, but wholly predictable, authorized and within the power of the [City] to control." *Haygood v. Younger,*769 F.2d 1350, 1357 (9th Cir. 1985) (en banc). "Proof of a single incident of unconstitutional activity is not sufficient to impose [municipal] liability, . . . unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy which policy can be attributed to a municipal policymaker." *Oklahoma City v. Tuttle,*
- The lack of need for use of proper field testing equipment in the "7 factor bulletin" shows a deliberate indifference to the plaintiffs constitutional rights.
- Nitza Maldonados, use of the improper Field test February 3rd 2022
- The decision to investigate Bryan and Thomas for narcotics sales after the FDLE  lab results came back as under 1% THC not being able to exclude hemp reinforces the pattern of deliberate indifference towards civil rights of law-abiding citizens involved in the hemp industry or even just hemp users.
- Shane Hayles subsequent use of the same field test on July 26th 2023, September 1st 2023, and October 19th 2023
- Officer T. Monford's decision to pull Bryan and Thomas from their vehicle and place them in handcuffs after Bryan informed him that he was in possession of hemp. Plaintiffs asked did they possess the proper field test because their knowledge that hemp will show presumptive positive on a NIK test Kit E. Officer proceeded to detain plaintiffs for 2-3 hours in handcuffs and search their vehicle discovering nothing illegal and seizing the plaintiffs federally legal hemp.

- The use of the same irrelevant field test during the execution of the search warrant on October 26th 2023, after Kierra Thomas asked to speak to a sergeant and informed him of the accompanying lab reports and requested that the proper field test be used to determine the legality of the field test. The sargents reply to Thomas was along the lines of "you guys think you found a loophole but you didn't" showing the City's complete indifference to civil rights.

  **Asset Forfeiture:**
- Plaintiffs' vehicles, valuables, and life savings totaling a value of over $300k were seized under civil forfeiture, causing significant financial hardship. This forfeiture was fueled by The city of Orlando.

**Exhaustion of Administrative Remedies:**

- Plaintiffs attempted to address these issues through official channels, including contacting the Chief of Police, Mayor's office, and State Attorney's office.
- However, these attempts were met with inaction or redirection, leaving them with no choice but to pursue legal action.

**Causes of Action**

**Count I: Violation of Fourth Amendment**

**Unfounded Seizure Stems from Faulty Training:** The plaintiffs allege the City of Orlando's inadequate training on hemp identification directly led to a violation of their Fourth Amendment rights. The seizure of their legal hemp and subsequent arrest resulted from officers relying on an unreliable field test instead of the available hemp-specific test. This highlights the City's failure to properly train its officers, causing a violation of the plaintiffs' rights.

**Count II: Violation of Fourteenth Amendment Due Process Clause**

Plaintiffs allege that Defendant's failure to train its officers on proper hemp identification resulted in the deprivation of their property (vehicles and valuables) and liberty without due process of law. The destruction of the seized hemp in November 2022, despite lab results indicating legal THC levels, constitutes a denial of due process.

**Count III: Violation of Fourteenth Amendment Equal Protection Clause**

Plaintiffs allege that the seizure of their federally legal hemp discriminated against interstate commerce, violating the Equal Protection Clause of the Fourteenth Amendment. The seizure directly contradicts federal guidelines for interstate commerce outlined in 7 U.S.C. § 1639o (a) & (b).

Furthermore, the seizure of legal hemp, a product of interstate commerce, discriminated against Plaintiffs in comparison to other businesses. The lack of documented arrests of other Orlando hemp sellers suggests selective

and discriminatory enforcement of the law caused by the city's failure to train officers in regards to Florida hemp regulations and federal laws that all states and local government agencies must abide by.

**Count IV: Selective Enforcement**

Plaintiffs allege that the Orlando Police Department's ("OPD") decision to target them while seemingly overlooking other hemp businesses violated their, Fourteenth Amendment right to equal protection under the law, and direct result of the city's indifference and failure to train in regards to identifying federally legal hemp.

**Relief Requested**

**Cost of destroyed hemp:**

*At the average price of $30 a eighth which is the most common quantity sold in smoke shops, The value of the 950 lbs of seized and destroyed hemp ($3,668,000)*

**Relocation Costs:**

*To achieve a secure and anonymous environment due to the fear and heighted probability of robbery attempts or home invasion due to Orlando Police Department depicting them online in a viral post as having substantial amounts of cash, expensive jewelry and other valuables in their home as well as relaying private information like the fact their bank accounts had balances of more than $100k, the Plaintiffs are considering relocating to a different city and residing in a condominium complex with enhanced security features, such as a manned security checkpoint and key fob access for residents. While the average price for a two-bedroom condo in a community like Daytona where the plaintiffs can have a piece of mind Modern Condos are approximately $500k- $1million, this represents the extraordinary circumstances thrust upon them due to the City's actions.*

**Loss of Income:**

*The career impact of the incident is substantial, Ms. Thomas's path towards a pharmaceutical career is undeniably obstructed in the medical field, felonies especially one like the armed trafficking of narcotics guarantees potential employers to have an unfavorable view of Ms. Thomas. Mr. Bryan's ability to re-establish himself within the legal hemp industry is also significantly compromised. The public posting of the mugshots, despite the charges being ultimately unfounded, has severely damaged the plaintiffs' reputations. Mr. Bryan, a distributor in the legal hemp industry, relies on trust with clients to provide them with legal products. As a reference point, the average smoke shop in Orlando generates annual revenue between $300,000 and $800,000. Mr. Bryan's lost income potential due to the seizure of his product and the reputational damage is substantial.*

**Compensatory damages for pain, emotional distress, and suffering caused by the wrongful arrest and prolonged detention:**

Following the traumatic SWAT team raid on their home, where they were held at gunpoint with military assault rifles, the plaintiffs endured not only the immediate fear but also lasting emotional consequences. Ms. Thomas was diagnosed with Post-Traumatic Stress Disorder (PTSD) after the incident. She experiences constant anxiety and a fear of driving triggered by police presence. Mr. Bryan developed anxiety and depression while held in an overcrowded and unsanitary jail facility. Both were prescribed medications they cannot afford due to the seizure of their life savings.

The wrongful arrest shattered their sense of security and stability. Mr. Bryan, a motivated entrepreneur in the legal hemp industry for 4 years, has become withdrawn and apprehensive about pursuing his business due to fear of incarceration. Ms. Thomas, who has been with Mr. Bryan for 10 years since the age of 19, has never been separated for more than a few hours. The 6 months of Mr. Bryan's incarceration caused significant emotional distress, documented in Ms. Thomas's therapy notes detailing her daily struggles and fear. This forced separation severely impacted their relationship, previously a strong support system.

The strain this case and incarceration has put on their relationship is irreparable. Bryan & Thomas have been together for 10 years since Thomas was 19 (her entire adult life), are best friends, and have never spent time apart more than a few hours for normal errands. The 6 months Bryan was incarcerated shattered their safety net of having each other. Ms Thomas cried every day while her life partner was incarcerated and away from her for trying to pursue the American dream dealing in agriculture.

The quality of their lives has demonstrably declined. The emotional toll and the disruption to their personal and professional lives will forever have lasting consequences. These damages are directly attributable to the City's failure to properly train its officers.

Furthermore, the harsh conditions of Mr. Bryan's incarceration significantly impacted his physical and mental health. Being served a monotonous diet consisting primarily of bologna sandwiches for six months contributed to his emotional distress and resulted in weight loss. This experience further exacerbated his anxiety and depression.

**Additionally, Mr. Bryan was forced to endure the following degrading and unsanitary conditions:**

- Confined in an overcrowded open bay with 69 other men, lacking basic privacy.
- The facility was unsanitary, with inadequate sanitation measures.
- His personal belongings, including essential commissary items, were regularly stolen.
- There was a complete lack of privacy when using the shower and bathroom facilities.

These deplorable conditions further compounded the emotional trauma Mr. Bryan experienced during his incarceration.

**The wrongful arrest also resulted in their eviction, drastically altering Ms. Thomas' life in particular.** Having their life savings seized left them with no financial resources. Ms. Thomas, who had previously lived a comfortable and legal lifestyle, was forced to return to her parents' home. The emotional distress of the situation, coupled with complete financial dependence on her parents for basic necessities, has taken a significant toll on her well-being.

*Furthermore, Ms. Thomas is not only struggling financially but also emotionally due to the absence of Mr. Bryan, her spouse and confidant.  Having relied on his support and partnership for the past ten years, navigating this crisis alone has exacerbated her anxiety and PTSD symptoms.*

## Plaintiffs respectfully request that this Court grant the following relief:

- ☐ Public apology and public return of property  from the involved officers Chief of Police, Nitza Maldonado, Shane Hayles, Glatthorn, Conroy and Internal affairs
- ☐ The expungement of records associated with charges
- ☐ A declaration that the City of Orlando's actions violated Plaintiffs' constitutional rights.
- ☐ Attorneys' fees and costs.
- ☐ An injunction requiring the City of Orlando to implement proper training for its officers on identifying and differentiating hemp from marijuana including use of proper field tests.
- ☐ An order returning any remaining seized property to Plaintiffs.
- ☐ A review of the City's policies and procedures related to search warrants and property seizure. To prevent future wrongful arrests and seizures.

**Compensatory damages**

in the amount of **Twenty Million Dollars ($20,000,000.00)** for the losses and injuries sustained by Plaintiffs (2 persons), including but not limited to:

- ☐ Loss of the seized hemp product;
- ☐ Financial losses associated with the seizure and storage of the hemp product;
- ☐ Emotional distress;
- ☐ Lost income potential;
- ☐ Punitive damages for the City of Orlando's deliberate indifference to the rights of its citizens.
- ☐ Costs associated with relocation;
- ☐ Medical expenses; and
- ☐ Any other damages proven at trial.

**Jury Demand**

Plaintiffs hereby demand trial by jury on all issues so triable.

Dated: 4/9/24

Respectfully submitted, David Bryan